69 F.3d 532
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
J. Christopher HENDERSON, Plaintiff-Appellant,
v.
UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant-Appellee.
 No. 94-2478.
 United States Court of Appeals, Fourth Circuit.
 Argued Sept. 28, 1995.
Decided Nov. 1, 1995.
 
 ARGUED: Anne Margaret Miles, SUGGS & KELLY, P.A., Columbia, SC, for Appellant. Elizabeth Anne Carpentier, SINKLER & BOYD, P.A., Columbia, SC, for Appellee. ON BRIEF: D. Michael Kelly, SUGGS & KELLY, P.A., Columbia, SC; Authur C. Lewis, LEWIS, BABCOCK & HAWKINS, Columbia, SC, for Appellant.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and MURNAGHAN and MICHAEL, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 J. Christopher Henderson appeals the district court's decision granting summary judgment to UNUM Life Insurance Co., contending that he should have been entitled to "total disability" benefits during a period while he was gainfully employed. Finding no error, we affirm.
 
 
 2
 * Henderson was formerly employed as a tax attorney. His law firm had a disability benefit plan insured through UNUM Life Insurance Co. that provided several types of benefits. Henderson began having cardiac troubles in 1985, when he suffered a heart attack. Under the terms of the plan, UNUM determined that Henderson was "residually disabled" as of January 1, 1990, and "totally disabled" as of January 1, 1991. During his last year of predisability employment, Henderson earned $85,753.
 
 
 3
 Henderson took other employment beginning in 1991. He worked first as a travel agent for Forest Lake Travel, earning $13,981 in 1991, $27,414 in 1992, and $5,587 in 1993. Henderson terminated his employment with Forest Lake Travel in late 1992, and began serving as a consultant with the University of South Carolina Development Foundation. At first, he earned $2,000 per month; later, he renegotiated compensation at $5,000 per month.
 
 
 4
 In January 1993, UNUM determined that Henderson was engaged in "rehabilitative employment," which the plan defined as follows:
 
 
 5
 "Rehabilitative employment" means work in any gainful occupation, other than an insured's regular occupation, for which he is reasonably fitted by training, education, or experience. The insured also must be earning currently at least 20% less per month than his indexed pre-disability earnings.
 
 
 6
 Joint Appendix (J.A.) at 36. Another provision of the plan described the effect of engaging in such employment:
 
 
 7
 If an insured is totally disabled from his regular occupation, but accepts rehabilitative employment within 31 days of receiving total disability benefits, the Company will keep paying the monthly benefit. But, after the first 24 months of total disability benefit payments, the Company will pay the insured a benefit based on the following formula[formula omitted].
 
 
 8
 Id.
 
 
 9
 The twenty-four-month period of total disability benefits, which began on January 1, 1991, expired on January 1, 1993. UNUM determined that by virtue of his work as a travel agent and a consultant, Henderson was employed in a gainful occupation "for which he [was] reasonably fitted by training, education, or experience." Accordingly, it reduced his benefits.
 
 
 10
 Henderson ceased working on October 1, 1994, and UNUM again began paying total disability benefits. The only period during which benefits are disputed, therefore, is the twenty-one-month span from January 1993 to October 1994.
 
 II
 
 11
 This court interprets the language of an ERISA plan according to its plain meaning. Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 57 (4th Cir.1992), cert. denied, 113 S.Ct. 1051 (1993). In the absence of any ambiguity, the court must adhere to the terms and conditions set forth in the plan itself. Id. at 56.
 
 
 12
 Henderson argues that because his "training, education, and experience are in the field of tax law," he could not have been "reasonably fitted" to serve as a travel agent or as a consultant. He contends that being a travel agent is "a job that does not even require a high school education." He adds that the salary differential between that job and practicing law was large. Henderson also contends that his work at the Foundation was "largely of a clerical nature, involving checking documentation for contracts and research grants," and therefore "did not utilize his training, education, or experience as a tax lawyer."
 
 
 13
 Henderson misapprehends the meaning of the term "rehabilitative employment." The definition includes "any gainful employment" for which the claimant is "reasonably fitted" either by training, or education, or experience. J.A. at 36 (emphasis supplied). The training, education, and experience need not relate to the insured's regular occupation, much less his specialty. To qualify as "totally disabled" in the first place--the prerequisite for performing "rehabilitative employment"--the insured must be unable to perform "each of the material duties of his specialty in the practice of law." J.A. at 21 (emphasis in original). It simply misses the point, therefore, for Henderson to complain that his new jobs did not enable him to use his skills or training as a tax attorney. The purpose of the "rehabilitative employment" provisions is to encourage disabled workers to find other gainful work even when they cannot continue in their former occupations. Accordingly, the operative concept of "training, education, and experience" is broad.
 
 
 14
 Henderson's work as a consultant to a nonprofit foundation clearly satisfied the requirement of bearing a reasonable fit to his skills and background.* His pre-disability earnings for full-time work were $85,753. His job at the Foundation paid $60,000 per year, which is 72% of his earnings as a lawyer. That salary lay well within the limits for rehabilitative employment, according to which benefits are terminated if the insured earns eighty per cent or more of his pre-disability earnings. Dr. James Rex, Henderson's supervisor, stated that his duties included reviewing research contracts, to ensure that they met all internal and budgetary requirements; obtaining documentation for check authorizations from the Earth Sciences Research Institute; and working on an application for tax-exempt status by the University of South Carolina Research Foundation. It is undisputed that Dr. Rex sought an applicant with "maturity," and would not have hired a recent college graduate. The job evidently took advantage of Henderson's training, education, and expertise.
 
 
 15
 Henderson contends that he should have been classified as totally disabled during the relevant time frame. This argument is based on a misunderstanding of the benefits plan. Under the provisions for total disability, benefits automatically cease after twenty-four months--here, January 1993--unless the insured "cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted." J.A. at 21. The standard is identical to that for rehabilitative employment benefits. Hence, if Henderson was engaged in rehabilitative employment, he was not totally disabled. In any event, Henderson's desire to avail himself of the total disability provisions is selfdefeating. After the first twenty-four months, the employee continues to receive a bonus under the rehabilitative employment provisions, even if he is gainfully employed (as Henderson was here). J.A. at 36. Under the total disability provisions, by contrast, a similarly-situated employee receives nothing. J.A. at 21. It could only aid Henderson, therefore, to be classified as rehabilitatively employed.
 
 III
 
 16
 For the reasons stated, the judgment of the district court is
 
 
 17
 AFFIRMED.
 
 
 
 *
 We need not decide whether Henderson's work as a travel agent also satisfied the definition. Once the insured is engaged in any rehabilitative employment, the plan permits UNUM to utilize all earnings of the insured "while he is in rehabilitative employment" to adjust the benefit calculation. J.A. at 36